Good morning. May it please the court, counsel. My name is David Berari. I represent the appellant Barry Christopher Brown, Jr. He asks that this court reverse the district court's denial of his motion to suppress and asks that you vacate his conviction for conspiracy to distribute controlled substances in violation of 21 U.S.C. 846. In support of that conclusion, we have two arguments. First, that probable cause did not support the issuance of the warrant to search Mr. Brown's hotel room. And secondly, that the good faith exception under Leon does not apply in this case. And I'd like to start by what the government really is missing in the affidavit and what's missing in comparison to other cases where probable cause has been found. But that's important here because it's what's missing that tells us what normally would support probable cause and how it doesn't exist here. We have no confidential informant. We have no controlled purchase. We have no dog sniff. We have no smell of marijuana or other substances emanating from the room that we see in other cases. We have none of that. We have no observations of Mr. Brown in North Dakota other than a photo that we'll talk about a bit more later. We have no history of contact between Mr. Brown and locals. We have no history of Mr. Brown in North Dakota. We have no evidence that people are coming in and out of his room, that there's any sort of drug dealing going on in the hotel room. How much can they get by on the two hotels used by drug traffickers? What does the record show? The record shows that there are three hotels in Bismarck that accept cash payment for a hotel room. And many hotels across the country accept cash payment and it's not just drug dealers who pay cash. Yeah, but what's in the record about this hotel? This hotel, yeah. The past record or which record? Well, what's in the record? Well, what's in the record is references to approximately nine other searches of that hotel where there were warrants issued in a search conducted and found illicit substances. In what period of time? I don't believe the record actually shows what that is. Imagine there's some very fancy hotels. You're not supposed to do this, but I am. I imagine there's some very fancy hotels in America that have that over a great period of time. Right. Yeah. Very, very rich. But tell me again about the record. In the record, what we have is that there were searches that led to some finding of illicit substances that led to some criminal charges. That's what's in the record. There's nothing, though, about any searches that didn't. Is that correct? Correct. Correct. It's the problematic situation that we have here that there's information provided, but the counterpoint isn't really considered. How many searches didn't lead to this? We also have in the record that it was $420 for the entire week's stay, which is an amount of money. But on social media, how much money did he have in the large amounts of accounts? Is what the affidavit says, I think. We don't know. Well... He says he has a stack of cash. We don't know what that is. How big is the stack? Is it this big? Is it this big? Are those ones? Are they fives? Are they tens? Are they... We don't have that information. It's all lacking from the affidavit and from the information available to the court and to the officer. Was there anything... I didn't see anything else in the affidavit that gave a reason for using cash except to remain anonymous. Is that correct? That's what it appeared. But he actually gave his... Is there also a requirement in these hotels that you have to give identification? That's not in the record, but we see from other cases. And again, why I'm drawing the contrast. In the Kelly case, they used a fake identity to pay with cash. And here, he isn't hiding. This isn't consistent with the officer's experience. And the officer isn't pointing that out in the way to say, but this doesn't actually fit what I normally see and have been trained. Mr. Brown is providing his identity, providing his birth date, providing his phone number, which the officer then investigates to find other information. But this doesn't fit the pattern that they normally see. The contrast would be true. If he were using a fake identity and they found that out, that might be suspicious. But here it isn't. The social media postings, there's a lot of discussion about posing and those sorts of things. Social media is broadly used by people to pose and show all sorts of things. Was the magistrate judge or I think it was the magistrate judge that got the affidavit, did they get a copy of those photos? They did not. So it's just the description of the photos that the affiant provided? Correct. And the implications, the confusion that the government had that the gun photo, the firearm photo was at the same time or same place. But it's not. What about the tip basis of this? Does that affect it any? The what? The tip basis, right? The staff at the hotel call the police. Right. Because they've been trained to do so, as I cited in the first footnote, that the Bismarck police for a long period of time have been training the hotels when they accept cash, if it's a person from certain metropolitan areas, which is many major metropolitan areas, to call the police. It doesn't really say anything, as we know from the Reed case. Just because you're from a major metropolitan area doesn't mean you're more suspicious than others. And let's face it. Before your time gets too far, address Leon, good faith, that for sure, because that's the rub. And here, when we look at the officer's conduct, these limitations, these suggestions that are finger gesture that isn't explained what that might mean in the firearm photo, no reasonable officer would believe this. And recently, in the Williams case, which is cited by the government on page 18, they say, well, we have to gloss over this. It's the training and the experience. But as this court wrote, true, if information connecting a defendant to drugs at a residence is negligible, generic statements about an officer's training and experience are insufficient to establish good faith reliance. And that's what we have here. We have negligible information about drug dealing, about a nexus between the location. Is Officer, or Agent Buckles, is he also the one that executed the warrant? That's not explicitly clear in the record. I believe he is, or is part of a team. Does that matter to the Leon analysis? I think it does here, but it's an objective view, so we look at it, what a reasonable officer would believe from this affidavit. Not a subjective intent. I think we do have a Halloween test, as you know, bare bones is the test in our law. And was this so bare bones? It doesn't look bare bones when you just look at it. It's when you read it and see what it doesn't say or what it does say that doesn't line up. There are words here, but this isn't a word count or a page limit. This isn't homework. There has to be more glue that connects it together. They might have a brick here, a brick there, but they don't have any mortar that holds it all together. What they don't have is information about the hotel. He says that in the affidavit that the drug dealers typically carry the illicit substances on their person or in their body cavities. Well, that's not what they're trying to search. You have to look at the information. You can't just accept it and merely rubber stamp this. Can I ask another question about these photos? You said that the magistrate judge did not have those available in review in the affidavit. And you've seen them. I'm sure they're part of the case. Is this an accurate description in your view of what was said? And I'm assuming there was nothing misleading about the description or there would have been some kind of franks. The information is in 130-1 in the record is where these photos are found. I wouldn't say they are false. There is information on the photos or in the photos that could be interpreted a different way. The photo with the stack of cash references a rap musician who had died about 10 or 11 days earlier. There's a reference to Uchi's, which is this musician's famous song. There are photos of the firearm. It's a totally different room. It's a dark colored room that doesn't look like a hotel at all. It is, I wouldn't say false because it's true. He said it's a bedroom. But a reasonable officer would know, you know, I'm just kind of stretching here. I know what these really show. The Uchi's song is about money. It's about stacks of money. That's what it's referring to, not drug dealing. It's referring to a dead rap artist. The statement about big bags of money don't say it's enormous. It's another song that then rhymes with gorgeous. That isn't in the record, but since you asked. And you are into rebuttal now, but use it as you wish. Given the circumstances, we don't believe that probable cause existed here or that it was sufficient for good faith exception. What this marks is a severe lowering of the probable cause standard. And we ask this court not to endorse these practices. I would like to reserve the remainder of my time for rebuttal. Thank you. You certainly may. Ms. Poole. Ms. O'Keefe, can you indicate where it? Hey. Sorry, I'm very tall. No, you don't need to apologize. That adjusts. Good morning. May it please the court, Mr. Berari, Jennifer Poole on behalf of the United States. Because there was a substantial basis to support the probable cause determination made by both the magistrate judge and the district court judge, the United States is requesting that this court affirm the district court's denial of the defendant's motion to suppress. What the defendant is effectively arguing is that this court should adopt a rule that says that probable cause doesn't exist unless the agent observes drug activity at the residence or at the hotel or otherwise have some direct evidence to that effect. But here there's no reference to any drug activity that linked to Mr. Brown. Not direct activity. That's right. And this court has said that it is not required that so long as there is indicia of drug trafficking activity that court or that courts can make an inference that drug dealers maintain evidence of their drug dealing where they live or where they stay. Therefore, the judge in this case was permitted to draw an inference based upon the circumstances in this case looked at collectively, of course, that this individual was maintaining drug activity or that kept evidence of his drug activity at the hotel room during the time. Does it matter that the affidavit actually says that in our experience and training drug traffickers keep the drugs on their person or in a vehicle and nothing about where they're staying? And so they specifically identified. So maybe, you know, if they stopped him or he was in a car, that would have been the location that this affidavit agent Buckles had identified as a maintained their drugs at the hotel or places where they stayed. But he did better than that. He specifically identified nine different individuals that were at this very hotel, individuals that he investigated, that he executed search warrants on. And he said, I have conducted several search warrants at this hotel, country in and suites, not some, all of yielded drugs. So, so does that though, require some kind of an analysis or presentation of a comparison between those nine and the information that they had about Mr. Brown? In other words, look, I had these, you know, we had X, Y, Z, A, B, and C, all of those factors apply to these nine. And we've got ABC X, Y, Z, and those apply to Brown too. Well, I certainly think he did that by inference. He said that this individual paid for cash. Now, importantly, this wasn't one night, two nights, three nights. This was 12 nights in advance of a cash deposit that were made at two hotels. That's a substantial amount of money. Even in the absence of an individual not providing an alias, it is indicative of drug trafficking activity because as set forth in the affidavit, drug dealers deal in large amounts of cash. That's what this individual was doing. Now, I would concede if it was just this fact, you know, if we're looking at this fact in isolation, that wouldn't be enough to support a probable cause determination. But we're looking at a lot of other facts. The fact that this individual arrived at this hotel from a source city, Detroit, Michigan. That's important here because it's well known that there is a direct pipeline from Detroit, Michigan to Western North Dakota because as this agent said, drug dealers are able to realize a substantial profit from the selling of opioids in Western North Dakota. So, that is one important factor. Well, that's actually two issues. I mean, you could say, oh, you get a better bang for your buck in Western North Dakota, but that doesn't say it's coming from Detroit. Well, he identified Detroit as a source city of opioids, yes. In addition, the defendant's social media activity, as the court had referenced, was indicative of drug activity. The defendant posted an image of himself with cash. And importantly, the defendant posted that image with a wad of cash during the time that he was staying at the hotel. In addition, he posted what's called a story image emoji with language to the effect of stop saying, I got a big bag. It's enormous. Again, this was important to this particular agent based upon his training and experience because he believed it was referencing his earnings, his large earnings from the sale of opioids, narcotics. There are other pictures that depict him with cash and with a gun that were posted before he got to North Dakota, but nonetheless still important. And finally, the defendant does have some criminal history. The defendant was charged with a drug trafficking offense out of Nevada. That's important here. That was a pending charge at the time that this affidavit was obtained. The defendant also had a conversation that same year with an individual who was incarcerated in Nevada for drug trafficking charges. Now, the affidavit makes clear that that charge was ultimately dismissed, but it's relevant because both of them, this is an individual in Detroit who has an arrest for drug conspiracy out of Nevada having a conversation with somebody who's incarcerated for a drug conspiracy among other charges in Nevada. Again, none of these factors alone, I would submit, are sufficient to support a probable cause determination. Was there also a conviction? Am I wrong? There was not. In fact, it's my understanding that charge is still pending. Okay. I misunderstood that. And the associated with other drug users part of the affidavit? How specific is it? All of this activity, when looked at collectively together, when you're looking at the totality of the circumstances, it's indicative of an individual who's engaging in drug activity. And because of that, the district court and the magistrate judge were allowed to make an inference, were allowed to infer that evidence of that drug activity would be found at his hotel. But in any event, even if this court determines that there isn't a substantial basis to support the district court's probable cause determination, the agent in this case relied on the warrant, excuse me, the agent's reliance on the warrant was objectively reasonable. And so, the affidavit makes reference to the staff at the hotel contacting law enforcement. Does that have any significance? Yes, I certainly think it does. They observed it as suspicious behavior. And I think Mr. Barari was right. I think that the law enforcement officers did do some training with the hotels. And this hotel, again, this isn't one, two, three nights. This is a total of 12 nights. And that was significant to this hotel clerk such that he picked up the phone and called law enforcement. I think that's right. We don't know what the clerk really said, right? We do not. That's not on the record. That's right. I mean, is there anything in the record? Well, let me start, kind of start over. It's in the record that this is one of three hotels in the city that take, that accepts cash. I mean, it occurs to me that they probably don't call law enforcement every time someone uses cash. But is there anything like that in the record that makes reference to the practices or habitual conduct of the staff of the hotel? Well, not from the staff, but the agent set forth that, as I said earlier, that he executed search warrants, investigated nine separate individuals that were staying at this hotel, all of which, those searches, all of which yielded drugs. Now, he debriefed some of those individuals. And importantly, some of those individuals said that they selected this hotel because it accepts cash. Again, it was one of three hotels in the Bismarck area that accepts cash. You know, this is Bismarck, North Dakota. It's not Minneapolis, North Dakota. So only three hotels. That's certainly significant. And I think you can, I think the, both the magistrate judge and the district court judge were able to infer from this that this is a hotbed of activity. This is a high crime area in the city because of the nine individuals that were dealing narcotics out of this particular hotel. Do we have a time, we don't have a time frame, right, for those nine? We do not. But the agent has, I think, roughly six or seven years of experience. So over six or seven years with nine? I think that would be the most, yes. But again, in any event, this is, the good faith exception applies here, your honors. As I said, this court has never required the specificity that the defendant is asking this court to adopt. This court, excuse me, this case is very similar, I would submit, to the U.S. v. Ross, where this court, without deciding whether the affidavit provided a sufficient nexus between the residents and the drug trafficking, determined that the good faith exception applied. Because the court specifically acknowledged from a law enforcement perspective that the law is not particularly clear in this area. This court recognized that it has not adopted a per se rule to the effect that there's a probable cause that a drug trafficker has evidence at his hotel or his residence when he's engaging in drug traffic activity. But this court said we've gotten really, really close. We have found probable cause to exist in cases where the officers have stated that in their experience, their training and experience, that there's an inference, that inference is appropriate, and a supporting affidavit described behavior that was consistent with drug trafficking activity. The court went on to say that your sister circuits have even gone farther. So in light of the uncertainty in this area, it was certainly reasonable for the officer in this case, and the officer in the Ross case, and the agent in this case, to draw an inference that the individual was maintaining his drug activity evidence at that hotel. On the, it seems like there's a couple of points you're focusing on the difference between the hotel and his person or vehicle. Where would you find it? But do we have cases where there's, it's just void, the affidavit is a void of any evidence or of drug trafficking at all, either with Mr. Brown or in this room or in connection with his car. It's all suspicion, right? It's all whether profiling or sort of meeting the kind of suspicious factors or characteristics. Do we have cases where, like this, where there's just nothing about drugs? That's the big inference, right? Well, because of all of these factors, therefore, it's drug trafficking. Do we have anything like that? I think if you look at the Ross case, it comes very close. And I think it's the Mayweather case from last year, 2022. I think that comes very close too. But again, this court has never said you need direct evidence. You're not going, I mean, we wouldn't expect a drug dealer to post on social media his drugs, right? That would be bad for business because law enforcement is going to come. Well, I don't think we're talking, posting, you know, on the door of the hotel, you know, stop by for your phenomenal. I mean, I guess I just think that there's something in between advertising, your drug dealing, and that kind of stuff that law enforcement officers testify about all the time, right? A hand-to-hand sort of transactions that look very odd, or there are a number of things that aren't necessarily, I saw the drugs, or I have a witness who said he or she bought from him. And I'm just curious about that missing part to this affidavit. Well, I think, yes, certainly that would have been better with the benefit of all these facts. I think it was reasonable for the agent to rely on the finding of both the magistrate judge and the district court judge, that probable cause of finding. This was not a bare-bones affidavit. It was seven pages of single-space detailed facts that dealt with just this defendant. The federal magistrate carefully reviewed it, signed off. The district court did the same, and all three determined that there was probable cause. And now this defendant is asking these three circuit judges to say what three federal officials did here was objectively unreasonable. And I would suggest, or I would submit that that is not supported by the record, Your Honor. Again, the information in the affidavit, coupled with the fact that the was recognized specifically by this court and Ross and Mayweather, and the fact that you have two federal judges that signed off on it, they independently reviewed it and determined that there was a probable cause finding. Based upon that, there is an additional probable cause such that the agent's reliance on the warrant was objectively reasonable. I see that my time is nearly up. If there are no further questions, I will conclude by requesting that the Court affirm the district court's denial of the defendant's motion to suppress. Thank you. Thank you for the argument, Ms. Poole. Mr. Berari, back to you. Thank you. What I kept thinking about was the rule of hammers, which is if you are a hammer, the danger is that you see everything as a nail. And that's what we have in this case. The officer and potentially the court jumped to conclusions because the connection wasn't there. They just saw something that sounds sort of suspicious. Oh, it must be drug dealing. That's not what a probable cause determination is or a de novo review. We need to look at this in the light with a little distance and see what's really there and what we have here. No connection. The court was commenting on that, that there's no recording of the call. We don't know what the substance of the call was with the gentleman in Las Vegas. There was no conviction in Nevada. Apparently, everything that happened in Las Vegas has stayed in Las Vegas. We don't have any suspicion from that. Nor is there a connection from Nevada, Las Vegas to this North Dakota hotel room, which is the key problem we have here. There was a lot of talk about paying cash for rooms. Well, not everyone has credit cards or credit. Not everyone has a bank account. They have to pay for cash. I've been in that situation myself when I was a poor artist. I had to pay for everything in cash. What we can't do is jump to conclusions that because somebody's from an urban area or has a poor background or doesn't have a credit card that they're a drug dealer or that because they've been seen with a firearm that they're a drug dealer. That doesn't work. We have politicians who have Christmas photos with guns. That doesn't mean they're drug dealers. There's also the problem with this connection to the nine individuals or the lack of a connection to these nine individuals. If I remember correctly, two of them have the same last name. I think they were at the same time. But there's no connection to Mr. Brown. They're using this affidavit prepared for somebody else for Mr. Brown or these other suspicions. What it's dangerously leading to is mere ratification. When we have somebody from out of state who pays cash from a metropolitan area, oh, they're a drug dealer. That's what they're training the hotel people to do is, look, they fit this profile. They're from out of town and they're from a metropolitan area and they're paying cash. There's nothing in the record about what that training is for the hotel staff, what they're told. How are you to distinguish between person A who pays with cash and person B who pays with cash? No. My understanding is it's if they're from certain metropolitan areas, which doesn't really mean much. Were those disclosed in the record, the metropolitan areas, by name? No. We're not. The danger is mere ratification and asking for rubber stamping. Essentially, this is leading towards other problems that, oh, we have this fact pattern. We've got a person from a city paying cash. Let's search the room. It becomes very arbitrary and it erodes our constitutional rights. It erodes the protections we have. I believe in this case, the district court and the magistrate got it wrong. Probable cause did not exist. We ask you to overturn the district court's determination on the motion to suppress and ask that the conviction be vacated. Thank you for your argument. Case number 23-1197 is submitted for decision by the court. Ms. O'Keefe. The next case, 22-3419, United States v. Robert Maloney. Thank you.